Slip Op. 16-31

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,** | |
| Plaintiff, | |
| v. | **Before: Timothy C. Stanceu, Chief Judge** |
| **UNITED STATES**, | **Court No. 14-00206** |
| Defendant, | |
| and | |
| **RHEETECH SALES & SERVICES, INC.,** | |
| Defendant-Intervenor. | |

## OPINION

[Affirming a final scope ruling of the International Trade Administration, U.S. Department of Commerce, interpreting the scope of antidumping and countervailing duty orders on certain aluminum extrusions from the People's Republic of China]

Dated: March 31, 2016

*Robert E. DeFrancesco, III*, Wiley Rein LLP, Washington, DC, for plaintiff.  With him on the brief was *Alan H. Price.*

*Douglas G. Edelschick*, Trial Attorney, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.  With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director.  Of counsel on the brief was *David P. Lyons*, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*Peter S. Herrick*, Peter S. Herrick, P.A., St. Petersburg, FL, for defendant-intervenor.

Stanceu, Chief Judge: Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC")

contests an August 7, 2014 final determination of the International Trade Administration, United

States Department of Commerce ("Commerce" or "the Department"), in which Commerce ruled

that "aluminum frames for screen printing, with mesh screen attached" ("screen printing

frames") are not within the scope of antidumping and countervailing duty orders on aluminum

extrusions from the People's Republic of China (the "Orders").

Before the court is plaintiff's motion for judgment on the agency record, in which

plaintiff argues that Commerce erred in ruling the merchandise to be outside the scope of the

Orders.  Defendant United States opposes plaintiff's motion and argues that the Final Scope

Ruling should be affirmed.  The court denies plaintiff's motion.

## I. BACKGROUND

### A.  The Contested Decision and the Administrative Proceeding

The decision contested in this litigation is the *Final Scope Ruling on Rheetech Sales &*

*Services Inc.'s Screen Printing Frames with Mesh Screen Attached*, A-570-967, C-570-968

(Aug. 7, 2014) (Admin.R.Doc. No. 9), *available at* http://enforcement.trade.gov/download/prc-

ae/scope/48-screen-printing-frames-7aug14.pdf (last visited Mar. 28, 2016) ("*Final Scope*

*Ruling*").

Commerce issued the Final Scope Ruling in response to a request ("Scope Ruling

Request") filed on March 4, 2014 by Rheetech Sales & Services, Inc. ("Rheetech"), a U.S.

importer and the defendant-intervenor in this litigation.  *Alum. Extrusions from the People's*

*Republic of China Scope Ruling Request Regarding Rheetech Sales & Services, Inc.* (Mar. 4,

2014) (Admin.R.Doc. No. 1) ("*Scope Ruling Request*").  In comments filed with Commerce on

May 16, 2014, plaintiff argued that the screen printing frames are "subject merchandise," i.e.,

merchandise that is subject to the Orders.  Letter from Wily Rein LLP to Sec'y of Com., re:

*Comments on Rheetech's Scope Ruling Request and Response to the Department's*

*Questionnaire* 11-12 (May 16, 2014) (Admin.R.Doc. No. 6) ("*AEFTC's Scope Ruling Request*

*Comments*").

## B.  The Antidumping and Countervailing Duty Orders

Commerce issued the Orders in May 2011.  *Aluminum Extrusions from the People's*

*Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin.

May 26, 2011) ("*AD Order*"); *Aluminum Extrusions from the People's Republic of China:*

*Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD*

*Order*").

## C.  Proceedings before the Court of International Trade

AEFTC commenced this action by filing a summons on September 4, 2014.  Summons,

ECF No. 1.  Plaintiff followed with a complaint on October 3, 2014.  Compl., ECF No. 10.  The

court granted defendant-intervenor status to Rheetech, which has not since filed a brief in this

litigation.  Order (Oct. 15, 2014), ECF No. 15.  Plaintiff submitted its motion for judgment on

the agency record, pursuant to USCIT Rule 56.2, on March 30, 2015.  Pl.'s R. 56.2 Mot. for J. on

the Agency R., ECF No. 21 ("Pl.'s Br.").  Defendant responded on August 6, 2015.  Def.'s Resp.

to Pl.'s Mot. for J. on the Agency R., ECF No. 30.  Plaintiff replied on September 4, 2015.  Pl.

Aluminum Extrusions Fair Trade Committee's Reply Br., ECF No. 31.

## II.  DISCUSSION

## A.  Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts

Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under

section 516A of the Tariff Act of 1930 ("Tariff Act").[1]  19 U.S.C. § 1516a(a)(2)(B)(vi).

Section 516A provides for judicial review of a determination of "whether a particular type of

merchandise is within the class or kind of merchandise described in an . . . antidumping or

countervailing duty order."  *Id*.  In reviewing the contested scope ruling, the court must set aside

"any determination, finding, or conclusion found . . . to be unsupported by substantial evidence

on the record, or otherwise not in accordance with law."  *Id*. § 1516a(b)(1)(B)(i).

### B.  Description of the Merchandise in Rheetech's Scope Ruling Request

The Final Scope Ruling described the merchandise as "aluminum frames with a mesh

screen attached for screen printing designs onto fabric" and as "welded 6063-T5 aluminum

rectangular frames with polyester woven mesh glued to one side of the frame."  *Final Scope

Ruling* 5 (footnote omitted).  It also stated that "[t]he frames are imported completely assembled,

with no finishing required before being sold."  *Id.* (footnote omitted).  Commerce further stated

in the Final Scope Ruling that "[a]s decribed by Rheetech, the screen printing frames are placed

in screen printing machines and are inherently part of a larger whole," *id.* at 12 (footnote

omitted), and that "[t]he screen printing frames are fully and permanently assembled and

completed, and are ready for installation into the screen printing machines, at the time of entry,"

*id.* (footnote omitted).

### C.  The Scope Language of the Orders

The scope language of the antidumping duty order and the scope language of the

countervailing duty order are essentially the same.  The Orders apply to "aluminum extrusions

which are shapes and forms, produced by an extrusion process, made from aluminum alloys

---

[1] All statutory citations herein are to the 2012 edition of the United States Code and all
regulatory citations herein are to the 2014 edition of the Code of Federal Regulations.

having metallic elements corresponding to the alloy series designations published by The

Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or

other certifying body equivalents)." *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed.

Reg. at 30,653.

 The scope of the Orders includes goods made of the specified aluminum alloys that

resulted from an extrusion process but also were subjected to certain specified types of industrial

processes after extrusion.  These post-extrusion processes are drawing, fabricating, and finishing;

the scope language provides non-exhaustive lists of types of fabricating and finishing operations.

As to finishing, for example, the good may be "brushed, buffed, polished, anodized (including

bright-dip anodized), liquid painted, or powder coated." *AD Order*, 76 Fed. Reg. at 30,650; *CVD*

*Order*, 76 Fed. Reg. at 30,654.  For fabricating, the Orders include a good that is, for example,

"cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered,

chamfered, threaded, and spun." *Id*.  The scope includes these aluminum extrusions even if they

are "described at the time of importation as parts for final finished products that are assembled

after importation" or "identified with reference to their end use." *AD Order*, 76 Fed. Reg.

at 30,650-51; *CVD Order*, 76 Fed. Reg. at 30,654.  Subject to a specific exclusion (the "finished

goods kit exclusion"), "the scope includes the aluminum extrusion components that are attached

(*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise . . . ."

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

 The scope language of the Orders provides an exclusion from the scope for certain

"finished merchandise," which reads as follows:

> The scope . . . excludes finished merchandise containing aluminum extrusions as
> parts that are fully and permanently assembled and completed at the time of entry,
> such as finished windows with glass, doors with glass or vinyl, picture frames
> with glass pane and backing material, and solar panels.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

D.  Commerce Was Correct in Ruling that the Screen Printing Frames Are Not Within the
Scope of the Orders

As the Court of Appeals for the Federal Circuit has held in a leading case, "[s]cope orders

may be interpreted as including subject merchandise only if they contain language that

specifically includes the subject merchandise or may be reasonably interpreted to include it."

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002) ("*Duferco*").

Applied to the facts of this case, the *Duferco* principle presents the question of whether

the "general scope language," i.e., the scope language considered apart from any specific

exclusion from the scope, reasonably may be interpreted to include the screen printing frames.

If so, then a second question is whether the screen printing frames satisfy the requirements of a

specific exclusion set forth in the scope language and therefore must be determined to be outside

the scope of the Orders.

For the reasons discussed below, the court concludes that the general scope language may

not reasonably be interpreted to include the screen printing frames.  It is unnecessary, therefore,

to consider the question of a specific exclusion.  However, even if, *arguendo*, the general scope

language were presumed to include the screen printing frames, this merchandise necessarily

would be excluded from the scope of the Orders by operation of the "finished merchandise

exclusion" referenced above.

The general scope language provides that the Orders apply to "aluminum extrusions

which are shapes and forms, produced by an extrusion process . . . ."  *AD Order*, 76 Fed. Reg.

at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  The intended meaning of the term "shapes and forms" is clarified by the following general scope language: "Aluminum extrusions are produced and imported in a wide variety of shapes and forms, including, but not limited to, hollow profiles, other solid profiles, pipes, tubes, bars and rods."  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654.  The examples presented to clarify the term "shapes and forms" are of single extruded articles.  These examples are an indication that the scope of the Orders was not intended to include, as a general matter, any assembled good that contains an aluminum extrusion as a part.

The screen printing frames are not themselves "extrusions" but rather are assemblies, each of which consists of a frame, which is a welded assembly of extrusions, and a polyester mesh screen that is attached to the frame.  There is no dispute in this case that the frame is assembled by welding together extrusions that are of an aluminum alloy specified in the Orders.

Under the general scope language, a good resulting from an extrusion process performed upon a covered aluminum alloy remains in the scope even if, after being extruded, it has been subjected to one of three specified types of processes: drawing, fabricating, and finishing.  *Id.* Absent from the list of post-extrusion processes identified in the general scope language is an assembly process.  To the contrary, the reference in the general scope language to fabrication includes an indication that assembly is *not* one of the contemplated post-extrusion processes: "Aluminum extrusions may also be fabricated, *i.e.*, *prepared for* assembly."  *Id.* (emphasis added).

The court concludes that it is not reasonable to interpret the general scope language to place within the scope of the Orders, as a general matter, *any* assembled good containing as a component an "aluminum extrusion," even as the term "extrusion" is broadly defined therein.  In

other words, the Orders apply to "extrusions," a term that is defined expansively by the Orders to

include goods that have been processed in various ways following an extrusion process.  The

term "extrusions," however, is not defined in the general scope language so broadly as to include

all goods consisting of assemblies of which extrusions are parts.

   The only reference in the general scope language that describes assemblies of any kind as

being within the scope of the Orders is the reference to certain "subassemblies," which in context

reads as follows:

> Subject aluminum extrusions may be described at the time of importation as parts
> for final finished products that are assembled after importation, including, but not
> limited to, window frames, door frames, solar panels, curtain walls, or furniture.
> Such parts that otherwise meet the definition of aluminum extrusions are included
> in the scope.  The scope includes the aluminum extrusion components that are
> attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially
> assembled merchandise unless imported as part of the finished goods 'kit' defined
> further below.[2]

*AD Order*, 76 Fed. Reg. at 30,650-51; *CVD Order*, 76 Fed. Reg. at 30,654.

---

[2] The reference in the text to "the finished goods 'kit'" is a reference to a specific
exclusion from the scope of the Orders that reads as follows:

> The scope also excludes finished goods containing aluminum extrusions that are
> entered unassembled in a "finished goods kit."  A finished goods kit is understood
> to mean a packaged combination of parts that contains, at the time of importation,
> all of the necessary parts to fully assemble a final finished good and requires no
> further finishing or fabrication, such as cutting or punching, and is assembled "as
> is" into a finished product.  An imported product will not be considered a
> "finished goods kit" and therefore excluded from the scope of the investigation
> merely by including fasteners such as screws, bolts, *etc*. in the packaging with an
> aluminum extrusion product.

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed.
Reg. 30,651 (Int'l Trade Admin. May 26, 2011); *Aluminum Extrusions from the People's
Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,654 (Int'l Trade Admin.
May 26, 2011).

With respect to the first two sentences of the above-quoted language, the screen printing frames are not plausibly described as "parts for final finished products that are assembled after importation" that "otherwise meet the definition of aluminum extrusions." *Id*. Even were it presumed that the screen printing frames are "parts for final finished products," they would not answer to the description "parts that otherwise meet the definition of aluminum extrusions." As discussed above, the definition of "aluminum extrusions" is "shapes and forms produced by an extrusion process . . . ," *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653, which after extrusion may be subjected to "drawing, fabricating, and finishing." *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654.

The third sentence in the language quoted above, i.e., the sentence referring to "subassemblies," is inapplicable to the goods under consideration when read according to plain meaning. Citing the Scope Ruling Request, Commerce described the screen printing frames as "imported completely assembled, with no finishing required before being sold." *Final Scope Ruling* 5 (footnote omitted). Because the "subassemblies" reference is an exception to the definition of "extrusions" put forth in the remainder of the general scope language and therefore should be read narrowly, it would be a mistake to construe the subassemblies reference to apply more broadly than its plain meaning would indicate.

Because screen printing frames are not "shapes and forms produced by an extrusion process," because they are, instead, assemblies, and because they are not described by the term "subassemblies, *i.e.*, partially assembled merchandise" as that term is used in the general scope language, the general scope language is not reasonably interpreted to include these imported products. The court concludes, therefore, that Commerce was correct in deciding that the screen printing frames described in the Scope Ruling Request are not within the scope of the Orders.

In the Final Scope Ruling, Commerce did not expressly conclude that the screen printing frames fall within the general scope language. Instead, Commerce concluded that the screen printing frames satisfy the terms of the finished merchandise exclusion. *Final Scope Ruling* 11 (". . . we find that Rheetech's Screen Printing Frames at issue meet the exclusion criteria for finished goods."). In so ruling, Commerce relied upon its regulation, 19 C.F.R. § 351.225(k)(1), and two of its previous scope rulings.[3]

Commerce did state that, based on its examination of the language of the scope and the determination in one of its previous rulings, it found that "the product in question is a 'subassembly' that meets the criteria for a finished good and is therefore excluded from the scope of the *Orders*." *Final Scope Ruling* 13 (citing *Final Scope Ruling on Side Mount Valve Controls*, A-570-967, C-570-968 (Oct. 26, 2012) *available at* http://enforcement.trade.gov/download/prc-ae/scope/27-Innovative%20Controls-Side-Mount-Valve-Controls-20121026.pdf (last visited Mar. 28, 2016)). The statement at issue could be read to mean that Commerce determined the merchandise to be within the scope of the Orders under the aforementioned subassemblies provision but ultimately determined it should be excluded from the scope of the Orders because it met the requirements of the "finished merchandise exclusion." This interpretation of the Final Scope Ruling, however, leads to two problems of construction. First, the "subassemblies" provision applies to "partially assembled merchandise" while the finished merchandise exclusion is confined to "merchandise" that is "fully and completely assembled." The language Commerce chose when drafting the two provisions would

---

[3] In the cited regulation, Commerce provided, in pertinent part, that "in considering whether a particular product is included within the scope of an order . . . , the Secretary will take into account the following: . . . The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1).

seem to be mutually exclusive.  Second, once a finding is reached that a good is within the

meaning of the scope term "subassemblies, *i.e.*, partially assembled merchandise," the good is, at

least arguably, included within the scope "unless imported as part of the finished goods 'kit'

defined further below." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

In setting forth the subassemblies provision, the scope language mentions the finished goods kit

exclusion without making a parallel reference to the finished merchandise exclusion, which

suggests that the subassemblies provision and the finished merchandise exclusion were intended

to be mutually exclusive.  Given these two problems of construction, a better interpretation of the

Final Scope Ruling may be that Commerce reached a decision that the screen printing frames are

not within the scope of the Orders by analyzing the applicability of the finished merchandise

exclusion without first deciding conclusively whether the general scope language described these

goods.[4]  But regardless of whether Commerce considered the screen printing frames to fall

---

[4] While not expressly concluding that the screen printing frames fall within the general scope language, Commerce opined that the aluminum frame portion of the article, if considered separately, would fall within the general scope language, stating as follows:

> The scope of the *Orders* describes aluminum extrusions as "shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by the Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents.)" Taken by itself, the aluminum frame of the screen printing frames would fall within this description.

*Final Scope Ruling on Rheetech Sales & Services Inc.'s Screen Printing Frames with Mesh Screen Attached*, A-570-967, C-570-968 (Aug. 7, 2014) (Admin.R.Doc. No. 9), *available at* http://enforcement.trade.gov/download/prc-ae/scope/48-screen-printing-frames-7aug14.pdf (last visited Mar. 28, 2016).  Reaching this conclusion was not necessary to the Department's decision, and the court is unable to agree with the conclusion if the conclusion was intended as a construction of the general definition of "extrusions" absent consideration of the "subassemblies" provision discussed elsewhere in this Opinion.  Additionally, in response to AEFTC's comment that Commerce should find that frames imported without the mesh screens (continued…)

within the "subassemblies" provision, or simply did not decide that question and instead

proceeded directly to the question of whether the goods are described by the finished

merchandise exclusion, Commerce unquestionably reached the correct result in placing these

goods outside the scope of the Orders.

The finished merchandise exclusion applies to "finished merchandise containing

aluminum extrusions as parts that are fully and permanently assembled and completed at the time

of entry." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Were the

screen printing frames presumed, *arguendo*, to be described by the general scope language, they

would be excluded from the scope because they would satisfy the requirements of this exclusion.

As Commerce found, and as is shown by substantial evidence on the record, these goods "are

imported completely assembled, with no finishing required before being sold."  *Final Scope

Ruling* 5 (footnote omitted).

In summary, the court's analysis of the scope language of the Orders differs somewhat

from that applied by Commerce in the Final Scope Ruling.  Nevertheless, the question before the

court is whether the court should grant or deny plaintiff's motion for judgment on the agency

record, not whether the court agrees entirely with the Department's analysis.  Because the screen

printing frames would not fall within the scope of the Orders under either analysis, plaintiff's

motion must be denied and judgment entered for defendant.  *See* USCIT R. 56.2(b).

In contesting the Final Scope Ruling, plaintiff raises a number of arguments that fail to

persuade the court that Commerce erred in placing the screen printing frames outside the scope

of the Orders.

---

(continued…)

would be within the scope, Commerce declined to decide that issue as it was not presented in the
Scope Ruling Request.  *Id.* at 13.

Plaintiff argues that the screen printing frames are, as Commerce found, "subassemblies," Pl.'s Br. 8 (citing *Final Scope Ruling* 13), and maintains that "[s]ubassemblies, by definition, are *not* final finished products[] and thus *cannot* meet the 'finished merchandise' exclusion in the scope of the AD/CVD orders," *id.* at 9.  Plaintiff submits that "[t]here was no substantial evidence on the record to support the agency's conclusion that Rheetech's products fit within this narrow exclusion to the scope." *Id.* at 8.  Plaintiff asserts, correctly, that Commerce found the goods at issue are "'placed in screen printing machines and are inherently part of a larger whole,'" *id.* at 8 (quoting *Final Scope Ruling* 12), but based on the Department's own finding that the screen printing frames are imported in fully assembled form and the supporting record evidence, the court must reject plaintiff's argument.  The screen printing frames are not correctly described as "partially assembled merchandise" that must be placed within the scope of the Orders by operation of the subassemblies provision.  Commerce expressly found that these goods "are imported *completely assembled*, with no finishing required before being sold." *Final Scope Ruling* 5 (emphasis added) (footnote omitted).  Similarly, it found that "[t]he screen printing frames are fully and permanently assembled and completed, and are ready for installation into the screen printing machines, at the time of entry," *id.* at 12 (footnote omitted).

In making its "subassemblies" argument, AEFTC relies on *Shenyang Yuanda Alum. Indus. Eng'g Co. v. United States*, 776 F.3d 1351 (Fed. Cir. 2015).  That decision is inapposite because it involved goods found to be parts of curtain walls, not goods identical or similar to those under consideration here.

Plaintiff contends, further, that "[s]creen printing frames are simply component parts for a larger finished machine[] and are thus *not* independent finished goods." Pl.'s Br. 10.  This argument presumes that to fall outside the scope of the Orders an assembled good such as the

screen printing frame must be "independent," i.e., not used as a component or accessory with any other good.  The scope language does not so provide.  Instead, while stating that "[s]ubject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation . . . ," the scope language qualifies this statement by providing that "[s]uch parts that *otherwise meet the definition of aluminum extrusions* are included in the scope."  *AD Order*, 76 Fed. Reg. at 30,650-51 (emphasis added); *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added).  As the court discussed previously, the assembled good at issue in this case does not meet that definition.

AEFTC argues that the screen printing frames do not satisfy the requirements of the finished merchandise exclusion, asserting that the mesh screen is not fully and permanently assembled to the frame at the time of entry.  Pl.'s Br. 11.  According to this argument, because only one of the four sides of the mesh screen is glued to the frame, "the mesh must therefore be either removed or fully glued down by the purchaser prior to use."  *Id.* (citing *AEFTC's Scope Ruling Request Comments* at 13-14).  Plaintiff's argument must be rejected.  First, under the court's analysis of the scope the screen printing frames are not described by the general scope language, regardless of the exclusions.  Second, plaintiff's assertion that the mesh must be removed or glued down prior to use is not supported by the record evidence and is at odds with the Department's findings.  Consistent with the record evidence, Commerce found that the screen printing frames are "fully and permanently assembled," *Final Scope Ruling* 12, and that upon importation the mesh screen is affixed in place with glue and only replaced after approximately 50,000 imprints, use for four or five different designs, or upon being torn or loosened, *id.* at 5 (citing Letter from Peter S. Herrick, P.A., to Sec'y of Com. re: *Rheetech Sales*

*& Services, Inc. ("Rheetech") – Screen Printing Frames Response to Request for Information*
*Dated April 3, 2014* (Apr. 15, 2014) 2,4 (Admin.R.Doc. No. 5)).

Finally, citing various past determinations interpreting the scope of the Orders, plaintiff argues that in the Final Scope Ruling "Commerce unlawfully departed from its past practice in interpeting the 'finished merchandise' exclusion, with insufficient explanation and rationale." This argument fails because the scope language of the Orders is not reasonably interpreted to include the screen printing frames.  In circumstances such as those presented here, "Congress intended the language of the orders to govern."  *Duferco*, 296 F.3d at 1098.

### III.  CONCLUSION

For the reasons discussed in the foregoing, the court must deny plaintiffs' motion for judgment on the agency record.  The court will enter judgment for defendant.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated:  March 31, 2016
        New York, New York